IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


PHAN S. PHAN BANG,                              :
                        Plaintiff,

              v.                                :              CIVIL ACTION
                                                               NO. 12-6951
CAROLYN W. COLVIN,
Acting Commissioner                             :
of Social Security,
                        Defendant.

**MEMORANDUM**

**Jones, II  J.**                                                    **July 25, 2014**

### I.        FACTUAL AND PROCEDURAL HISTORY

On September 15, 2009, Plaintiff protectively filed an application for Supplemental

Security Income ("SSI"), claiming that she could not work as a sewing machinist because of

hypertension, thyroid disease, diabetes, and pain in her hands, legs and back.  (Admin. R. 23, 40,

182.)  Plaintiff's initial application was denied on May 3, 2010 and she timely filed a written

request for a hearing on June 14, 2010.  (Admin. R. 78, 83-85.) Said hearing was ultimately held

on July 13, 2011 before Administrative Law Judge ("ALJ") Paula Garrety and during same,

Plaintiff testified in English with assistance from a Cantonese interpreter. [1]  (Admin. R. 37.)

Additionally, a vocational expert testified.  (Admin. R. 51-53.)

Judge Garrety denied Plaintiff's SSI application on July 18, 2011.  (Admin. R. 20-31.)

While it was determined that Plaintiff had a severe impairment (generalized multiarticular

---

[1]  On March 2, 2011, the ALJ adjourned so that Plaintiff could obtain a legal representative and
an interpreter.  (Admin. R. 67-75).  On April 13, 2011, Plaintiff appeared with an interpreter, but
the ALJ again adjourned to allow Plaintiff to retain legal counsel.  (Admin R. 57-64).

degenerative arthritis), Judge Garrety held that this impairment did not constitute one of the listed Appendix 1 impairments found in Subpart P of 20 C.F.R. pt. 404, that if satisfied, required an automatic finding of disability. (Admin. R. 25-26.) Judge Garrety then determined whether this impairment prevented Plaintiff from having the residual functional capacity ("RFC") to perform her previous work, which was light. 20 C.F.R. § 404.1545. Such a finding required the ALJ to evaluate those alleged symptoms that were substantiated by objective medical evidence and to weigh the credibility of any statements that were not substantiated by objective medical evidence. In doing so, Judge Garrety afforded the medical evidence of record little weight because the opinions of the physicians were unsupported by the doctors' own records, too restrictive, and primarily based upon Plaintiff's subjective complaints. (Admin. R. 26-30.) Importantly, Judge Garrety found Plaintiff's credibility to be "exceptionally poor," and noted that Plaintiff appeared to fabricate her inability to speak English throughout the proceedings. (Admin. R. 29, 169, 245.) Ultimately, Judge Garrety determined that Plaintiff had the residual functional capacity to perform medium work. (Admin. R. 30.) Judge Garrety further determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Admin. R. 30.) Accordingly, Judge Garrety found Plaintiff to be "not disabled." (Admin. R. 30.)

Plaintiff sought review of this decision and the same was denied by the Social Security Administration's Appeals Council, prompting Plaintiff to file the instant civil action. (Admin. R. 1.) The matter was referred to United States Magistrate Judge Henry S. Perkin for a Report and Recommendation (also referred to herein as "R&R") and upon review, Judge Perkin concluded that the ALJ's decision should be affirmed. Plaintiff has filed Objections to the Report and Recommendation, claiming that the ALJ's decision should be reversed or remanded due to errors

of law and because it is not supported by substantial evidence.  (Pl.'s Objs. R&R, 1.)  In particular, Plaintiff complains that the ALJ's decision has no medical foundation, was contradicted by "every" medical opinion of record, and was inconsistent.  She further asserts that the ALJ improperly substituted her own lay judgment for the opinions of all the medical experts. (*Id*. at 5, 7-8.)

## II.    STANDARD OF REVIEW

Objections to a Report and Recommendation are entitled to *de novo* review.  28 U.S.C. § 636(b)(1)(C).[2]  However, the review of a final decision of the Commissioner of Social Security is deferential and is limited to determining whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Jenkins v. Comm'r of Soc. Sec.*, 192 F. App'x 113, 114 (3d Cir. 2006).  In determining the existence of substantial evidence to support an ALJ's decision, this Court must consider all evidence of record, regardless of whether the ALJ cited to it in her decision.  *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).  Substantial evidence is difficult to precisely define; it "'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)).  In terms of the traditional burden of proof standards, substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  *Ginsburg v. Richardson,* 436 F.2d 1146, 1148 (3d Cir.1971).

---

[2]  This Court recognizes that although Plaintiff's Objections to Judge Perkin's Report and Recommendation are duplicative of issues raised before the Magistrate Judge, they are nonetheless entitled to *de novo* review. *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) (clarifying that "any appeal to a district court based on an objection to a Magistrate Judge's order" is subject to *de novo* review even if it rehashes arguments already presented to the Magistrate Judge).

### III.   DISCUSSION

Upon review of the entire record, this Court finds that the ALJ's ultimate conclusion was correct. [3]  Plaintiff claims Judge Garrety erred in assessing her residual functional capacity ("RFC").   Residual functional capacity is "the most [claimant] can still do despite [claimant's] limitations."  20 C.F.R. § 416.945(a)(1).   A claimant's residual functional capacity may be classified as either "sedentary," "light," "medium," "heavy," or "extra heavy."  *Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir. 1994).   In evaluating a claimant's RFC, the ALJ considers all relevant evidence, including medical opinions, the claimant's statements about his or her impairments, and statements from medical sources.  20 C.F.R. § 416.945(a)(3); *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001).   The ALJ must explain its reasons for the weight given to medical opinions, as well as the degree to which the claimant's testimony is credited. 20 C.F.R. § 404.1527(e)(2)(ii); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011).   When rendering its decision, the ALJ "must comport with proper procedure and apply proper legal standards."  *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). The ALJ makes the ultimate decision regarding a claimant's RFC.  20 C.F.R. § 404.1546(c).

Plaintiff contends that the ALJ's assessment of her RFC at medium work is directly contradicted by all available medical opinions. [4]  (Pl.'s Objs. R&R, 4.)  Assessing Plaintiff's RFC is of critical importance in this case because it is dispositive of whether Plaintiff is disabled

---

[3]   Upon said assessment, this Court does not find adequate evidence to substantiate the ALJ's determination that within the meaning of the Regulations, Plaintiff had the "severe" impairment of generalized multiarticular degenerative arthritis.  (Admin. R. 25.)  In fact, Rheumatoid Factor testing conducted on January 24, 2011 showed Plaintiff to be within normal ranges.  (Admin. R. 286.)   Moreover, the majority of the medical records include little more than Plaintiff's subjective complaints regarding various alleged ailments such as dizziness, hot flashes, flu symptoms, etc…  However, even giving Plaintiff the benefit of this finding, the final conclusion reached by the ALJ regarding whether or not Plaintiff was ultimately "disabled" was correct.
[4]   Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 416.967(c).

or not.[5] By finding that Plaintiff could perform medium work, the ALJ then followed Rule

203.14 in Appendix 2 to Subpart P of 20 C.F.R. pt. 404 to find Plaintiff "not disabled." (Admin.

R. 30.)[6] However, if the ALJ had assessed Plaintiff's RFC at light work, as Plaintiff contends she

should have, then the ALJ would have been directed by Rule 202.04 in the same Appendix to

find Plaintiff "disabled." (Pl.'s Objs. R&R, 1-2.) For the reasons that follow, this Court finds the

ALJ properly applied all legal standards in arriving at her RFC assessment.

     A treating source's opinion is given controlling weight only if it is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with

the other substantial evidence in [the record]." 20 C.F.R. § 404.1527(c)(2). The ALJ can reject

a treating source's opinion "on the basis of contradictory medical evidence, but may afford a

treating physician's opinion more or less weight depending upon the extent to which supporting

explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing

*Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985)). If the ALJ determines that a treating

physician's opinion should not be given controlling weight, it must consider other factors in

assigning appropriate weight to the opinion. 20 C.F.R. § 416.927(c)(2). These factors include:

(1) the length of the treatment relationship; (2) the kinds of examinations and testing the treating

physician has performed or ordered; (3) evidence that supports the opinion; (4) consistency of

the opinion with the entire record; (5) and specialty of the treating doctor. *Id*. The ALJ also

---

[5]  After assessing a claimant's RFC, an ALJ is directed to the Medical-Vocational Guidelines. 20 C.F.R. pt. 404, subpt. P, App. 2. These guidelines directly impact the ALJ's final decision regarding whether claimant is disabled through a comprehensive chart that takes into account the claimant's RFC, age, education, and previous work experience. *Id.*

[6]  Rule 203.14 is one of many guidelines found in 20 C.F.R. pt. 404, subpt. P, App. 2, discussed *supra*, at note 5, that guide an ALJ's decision regarding a claimant's disability status based on his or her age, education, and previous work experience. Rule 203.14 specifically pertains to claimants, such as Plaintiff, whom are of "advanced age," have graduated high school, and work in "unskilled" labor. 20 C.F.R. pt. 404, subpt. P, App. 2.

applies the above factors in according weight to all other medical opinions of non-treating

source(s). 20 C.F.R. § 416.927. Although an ALJ is responsible for assessing a claimant's RFC,

he or she is "not free to employ [his or her] own expertise against that of a physician" if that

physician presents competent medical evidence. *Plummer*, 186 F.3d at 429.

Dr. Ramona Chube has been Plaintiff's treating physician since approximately 2007.

(Admin. R. 226.) A treating source is an applicant's "own physician, psychologist, or other

acceptable medical source" who has provided the applicant with treatment or evaluation. 20

C.F.R. § 404.1502. In an arthritis questionnaire, Dr. Chube opined that Plaintiff had joint

inflammation of the hands, shoulders, ankles, knees and spine. (Admin. R. 297.) Dr. Chube

further opined that Plaintiff could sit and stand for no more than thirty minutes at one time, work

no more than one hour per day, never lift anything, and never bend, stoop, manipulate her hands,

or raise either of her arms over her shoulders. (Admin. R. 298.) The ALJ assigned little weight

to these opinions in part because Dr. Chube treated Plaintiff mostly for other conditions such as

diabetes, hypertension, and hypothyroidism. (Admin. R. 218, 220-21, 260-61.) X-rays of

Plaintiff's hands revealed deformities of the middle phalanx on both hands, both of which were

most likely present at birth. (Admin. R. 258.) The x-ray of Plaintiff's left shoulder revealed

only "mild degenerative changes of [Plaintiff's] glenohumeral and acromioclavicular joints."

(Admin. R. 291.)

Dr. Harris A. Ross, a non-treating source, was retained by the Social Security

Administration in order to provide an opinion regarding Plaintiff's impairments. (Admin. R.

242-50.) After performing one physical examination of Plaintiff, Dr. Ross opined that Plaintiff

suffered from hypertension, generalized multiarticular degenerative arthritis, trigger finger,

diabetes, proteinuria, mild obesity, and low back pain. (Admin. R. 245-46.) However, Dr. Ross

conducted no objective medical tests to evaluate Plaintiff's arthritis.  (Admin. R. 242-50.)  Dr. Ross also opined in a medical questionnaire that Plaintiff could not lift or carry objects weighing more than three pounds, stand or walk more than one hour per day, or sit for more than six hours per day.  (Admin. R. 247.)  Further, Dr. Ross opined that Plaintiff was limited both in her upper and lower extremities in pushing and pulling, could bend occasionally, and could never kneel, stoop, crouch, balance, or climb.  (Admin. R. 247-48.)  However, since Dr. Ross never performed any laboratory or diagnostic tests on Plaintiff, these findings were essentially based on Plaintiff's subjective complaints.  (Admin. R. 242-50.)

Dr. Mary Ryczak, a State agency physician, completed Plaintiff's Physical RFC Assessment.  (Admin. R. 251-57.)  In the Assessment, Dr. Ryczak opined that Plaintiff could occasionally lift up to twenty pounds, frequently lift up to ten pounds, stand and/or walk for about six hours per day, and sit for about six hours per day.  (Admin. R. 252.)  Moreover, Dr. Ryczak opined that Plaintiff was fully capable of pushing and pulling, climbing, balancing, stooping, kneeling, crouching, and crawling.  (Admin. R. 252.)  Dr. Ryczak stated that Plaintiff was also not limited in reaching, handling, fingering, or feeling.  (Admin. R. 253.)

On January 5, 2010 and March 1, 2011, Orthopedic Surgeon James S. Raphael also evaluated Plaintiff.  (Admin. R. 214.)  During the March 1, 2011 evaluation, Dr. Raphael noted that Plaintiff's trigger fingering had resolved.  (Admin. R. 292.)  Dr. Raphael's physical examination further revealed normal range of motion in Plaintiff's shoulders.  (Admin. R. 292.)

The ALJ assigned little weight to Dr. Chube's opinion, reasoning that "it is completely unsupported by [Dr. Chube's] records, which reflect merely routine care."  (Admin. R. 29.)  The ALJ also assigned little weight to the opinion of Dr. Ross, concluding that Dr. Ross's medical source statement was "clearly based on the claimant's complaints, which are not credited here."

(Admin. R. 29.)  The ALJ afforded little weight to Dr. Ryczak's RFC assessment, which limited Plaintiff to light work, because the assessment was "too restrictive given the impairments (diabetes, hypertension, and trigger fingers) that Dr. Ryczak identified."  (Admin. R. 29.) However, the ALJ did credit Dr. Ryczak's assessment that Plaintiff has no manipulative limitations and Dr. Raphael's determination that Plaintiff's small finger triggering had completely resolved.  (Admin. R. 28-29, 214.)

Upon review of this matter *in toto*, this Court finds that the ALJ's final decision is supported by substantial evidence of record.  The ALJ thoroughly explained the factual and legal bases for the findings that led to her ultimate decision.  *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981) (emphasizing that an ALJ's RFC finding must contain an "explanation of the basis on which it rests.").  The ALJ also illustrated the stark contradictions regarding Plaintiff's alleged limitations as presented by Drs. Ryczak, Chube, Raphael, Ross, and Plaintiff herself.  *Plummer*, 186 F.3d at 429 ("An ALJ may reject a treating physician's opinion outright . . . on the basis of contradictory medical evidence."). Specifically, Dr. Chube's findings that Plaintiff could sit for no more than thirty minutes per day directly contradict Plaintiff's own statement that her limitations do not affect her ability to sit.  (Admin. R. 194, 298.)  As Judge Perkin noted, the ALJ is entitled to weigh the relative worth of all evidence in its evaluation of a claimant's limitations. (R&R, 11) (citing 20 C.F.R. §416.927(c) (describing the ALJ's discretion in deciding how much weight to give a medical opinion)).

The ALJ properly concluded that Dr. Chube's findings regarding Plaintiff's lifting abilities were not supported by Dr. Chube's treatment records, which indicated neither treatment of arthritis nor prescription of a cane or pain medication.  (Admin. R. 28); (R&R, 8.)  Based on these disparities, it was reasonable for the ALJ to conclude that Dr. Chube's medical opinions

were unsubstantiated.  Likewise, the ALJ's rejection of Dr. Ross's medical source statement was proper. Plaintiff argues that the ALJ erred in rejecting Dr. Ross's opinion for being "clearly based on claimant's complaints."  (Admin. R. 29.)  However, the ALJ reasonably concluded that Dr. Ross's findings were based on Plaintiff's subjective complaints because Ross's opinions were not founded on any diagnostic or laboratory test results.  20 C.F.R. § 404.1528(a) (indicating that a claimant's own subjective statements alone are not sufficient to support a finding of disability); (Admin. R. 242-50.) The ALJ also acknowledged contradictions between Dr. Ross's findings and the other evidence.  (Admin. R. 28-29.)  For example, at the same time Dr. Ross opined that Plaintiff could barely stand or walk, he also noted Plaintiff possessed no ambulatory aids.  (Admin. R. 244-45, 247.)  Furthermore, Dr. Ross's findings that Plaintiff had normal range of motion of her cervical spine conflicts with Plaintiff's complaints of neck pain. (Admin. R. 231, 244-45, 248.)  Also contrary to Plaintiff's subjective complaints, Dr. Ross found that Plaintiff's knees were in normal condition.  (Admin. R. 218, 245.)

The ALJ's reasons for dismissing state agency Dr. Mary Ryczak's RFC assessment were equally appropriate.  The ALJ chose to give "little weight" to Dr. Ryczak's RFC assessment regarding Plaintiff's ability to lift objects because the assessment was "too restrictive."  (Admin. R. 29.) As the ALJ noted, Dr. Ryczak only evaluated Plaintiff's claims of diabetes, hypertension and trigger fingers. (Admin. R. 251-57.)  Most importantly, while an ALJ must consider opinions of state agency physicians, the ALJ is never bound by or required to adopt those findings.  20 C.F.R. §416.927(e)(2)(i). Accordingly, Plaintiff's claim that the ALJ erred with respect to Dr. Ryczak's evidence is meritless.

The ALJ possessed the authority to independently weigh the worth of all medical opinions available. Similarly, the ALJ was entitled to make the final decision regarding

Plaintiff's RFC. *Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (internal citations omitted). In applying the medical-vocational guidelines found in Appendix 2 to subpt. P of 20 C.F.R. pt. 404, the ALJ must first determine the claimant's RFC and then apply it to the guidelines. Thus, Plaintiff's objection that the ALJ improperly relied on the medical-vocational guidelines is without merit because the initial RFC determination necessary to that guideline process is within the sole discretion of the ALJ. *Id.*

Plaintiff's general objection that the ALJ substituted her own lay judgment for that of the doctors is also misguided. While ALJs must consider medical evidence, they are not obligated to adopt that evidence. *See Hur v. Barnhart*, 94 F. App'x 130, 133-34 (3d Cir. 2004) (finding the ALJ's dismissal of a medical opinion was not a substitution of the ALJ's lay judgment when the record lacked any objective medical evidence to substantiate the medical opinion); *Knepp v. Apfel*, 204 F.3d 78, 87 (3d Cir. 2000) ("Contrary to the assertion of [plaintiff], the fact that the ALJ disregarded [medical opinions] does not demonstrate that the ALJ was simply asserting her own medical opinion over that of the medical expert."). In this case, Judge Garrety's disapproval of certain medical opinions of record was based on the fact that those medical opinions lacked any objective support in the record. (Admin. R. 25-29.)

Plaintiff also objects on the basis that the ALJ's RFC assessment at medium work lacks any evidentiary support. (Pl.'s Objs. R&R, 4.) However, this argument overlooks the ALJ's detailed analysis of Plaintiff's impairments. (Admin. R. 25-29.) This Court's role in reviewing the evidence is highly deferential. 42 U.S.C. § 405(g); *Fargnoli*, 247 F.3d at 38 (noting that a reviewing court is bound by an ALJ's findings even if that court would have decided the inquiry differently so long as the ALJ's findings are supported by substantial evidence) (citing *Hartranft*,

10

181 F.3d at 360))); *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986) (clarifying that a reviewing court's "inquiry is not whether the ALJ could have reasonably made a different finding based on this record" but instead whether the ALJ's findings are supported by substantial evidence).   An ALJ's decision cannot be read in isolation, but rather must be read as a whole. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Schuster v. Astrue*, 879 F. Supp. 2d 461, 466 (E.D. Pa. 2012) (clarifying that a reviewing court is not required to "'read the ALJ's opinion in a vacuum.'"); *see also Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981) ("[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice.").   In reading the decision as a whole and in conjunction with Plaintiff's testimony and all medical documentation, it is clear that the ALJ's conclusion is supported by substantial evidence.

Essential to the ALJ's decision was its assessment that Plaintiff's credibility was very low.  (Admin. R. 29.) This assessment was based on the various discrepancies that arose out of evidence presented by Plaintiff.  (Admin. R. 27-29.)[7]  Although not mentioned by Plaintiff, this finding was sufficient to support the ALJ's holding.  *E.g., Hagner v. Barnhart*, 57 F. App'x 981, 983 (3d Cir. 2003) (affirming an ALJ's finding that the objective medical evidence of record did not support plaintiff's complaints because of "inconsistencies between [plaintiff's] testimony and

---

[7] Upon review of the record *in toto* and in particular, the transcripts, this Court similarly recognizes the extent to which Plaintiff's testimony and documented representations were not credible.  One example is Plaintiff's purported inability to speak and understand the English language.  Plaintiff has been living in the United States for more than thirty years.  Contrary to the assertion that Plaintiff  "barely speaks English"  (Objs. R&R, 1), she communicated with all of her physicians in English and was even noted by one doctor as being "fluent in English." (Admin. R. 245).  Moreover, on her Disability Report (Admin. R. 182), Plaintiff affirmed that she can speak and understand English.   Yet, her hearing before Judge Garrety had to be continued because of an alleged inability to understand the English language. (Admin. R. 67-75).

the record."). Lastly, as Magistrate Judge Perkin correctly reiterates, "the ALJ is entitled to weigh all evidence in making [her] finding."  (R&R, 12) (citing *Brown*, 649 F.3d at 196)).

Contrary to the allegations set forth in Plaintiff's Objections, the ALJ did consider medical opinions in her decision. In addition to the those portions of the medical opinions discussed hereinabove, the ALJ also cited to the treatment records of Dr. Raphael which indicated Plaintiff's small finger triggering had completely resolved.  (Admin. R. 28, 214.) Further, the ALJ credited Dr. Ryczak's finding that Plaintiff had no manipulative limitations. (Admin. R. 29.)  Thus, Plaintiff's assertion that the ALJ's decision lacked substantial evidence is misguided. Clearly, the substantial evidence of record indicates Plaintiff has been treated primarily for her subjective complaints involving symptoms pertaining to diabetes, hypothyroidism, and obesity. (Admin. R. 218, 220, 227, 234, 236.)  Although the records do contain subjective complaints by Plaintiff regarding alleged pain in her hands, legs and back, the diagnostic testing and minimal treatment for arthritis do not establish the level of severity complained of by Plaintiff.

## IV.    CONCLUSION

Upon review of the record *in toto*, this Court finds that substantial evidence supports a finding that Plaintiff is not disabled. The ALJ adequately discussed each of Plaintiff's impairments.  (Admin. R. 25-29.)  Moreover, the ALJ offered reasons in support of her treatment of all the medical evidence.  (*Id.*)  Importantly, the ALJ was entitled to make the ultimate decision regarding Plaintiff's RFC. 20 C.F.R. § 404.1546(c).  In so doing, the ALJ was also permitted to consider Plaintiff's credibility. *E.g., Hagner*, 57 F. App'x at 983. Thus, Plaintiff's objections that the ALJ substituted her own lay judgment, improperly used the regulation

guidelines, failed to substantiate her decision with any evidence, and produced a decision contrary to the objective medical evidence, are overruled.

In view of the foregoing, Judge Perkin's Report and Recommendation shall be adopted in its entirety.  An appropriate Order follows.

BY THE COURT:


/s/ C. Darnell Jones, II
_____
C. Darnell Jones, II      J.